## Petit Jury

*Brett O. Feese, assistant district attorney,* for the Commonwealth.

*William J. Miele,* for defendant.

RAUP, *P.J.,* December 17, 1990—The matter before the court is a petition filed by the Public Defender's Office challenging the selection process of potential jurors in Lycoming County on the basis

that the process results in under-representation of minority race members and indigent individuals.

The District Attorney's Office has preliminarily objected to the fact that the petition was not brought in the name of particular defendant; however, at the hearing on the motion the district attorney has withdrawn that objection recognizing that there are many members of the clientele of the Public Defender's Office who would be members of minority racial groups or indigents who would have standing to raise the issue. A second preliminary issue was raised as to failure to join a necessary party, the jury commissioners of Lycoming County. The jury commissioners were represented at the hearing, and have expressly waived on the record any objection to their not being formally notified of the proceeding.

The district attorney has next demurred to the petition on the basis that indigents do not form a distinctive group in the community which would have standing to raise the issues presented by this petition. That motion is summarily granted and the petition is dismissed with regard to the assertion that indigent members of the community are underrepresented in the jury selection process in Lycoming County.

The remaining issue, which was the subject of testimony at the hearing, is whether the selection process in Lycoming County unfairly discriminates against minority race individuals. The first legal issue presented by the defense is that the pertinent statute requires that the voter registration list be at least one of the sources of information used in the jury selection process. See 42 Pa.C.S. §4521(a). The jurors in Lycoming County are selected on a random basis from the occupational tax list. It is our construction of the above-cited statute that the voter

44

registration list is one of alternate lists available to the court and that we are not required to use that list as part of the selection process. Therefore, the initial legal argument of the defense is denied.

The facts presented with regard to the issues raised in the petition can be summarized as follows. The most recent census data would be that contained in the 1980 census which reveals that there are approximately 118,000 people in Lycoming County, of whom approximately 82,000 are adults. As of the date of the hearing the occupational tax list contained the names of approximately 75,392 adult individuals. This would constitute approximately 91 percent of the adult population. The voter registration list as of November 1990 contains the names of 46,851 individuals, which would be about 56 percent of the adult population. Both the occupational tax list and the voter registration list are silent as to the race of the individuals on the list.

The black population, which is the minority race population of concern in this case, as of the 1980 census was 1.48 percent of the Lycoming County population. Most of the members of the black race were residents of the city of Williamsport. Testimony was presented that there has been a significant influx of black individuals into Lycoming County, principally the city of Williamsport, and that the black population of the city of Williamsport may have doubled since the 1980 census.

Testimony was presented that while there has been a slight increase in the number of blacks who have registered to vote that the percentage of those recently arriving in the city who are registering is undoubtedly well below 50 percent of the adults.

It would appear that the occupation tax assessment list is compiled by the Lycoming County Tax Assessor's Office from the assessment records of

each municipality's tax assessor. Those assessors work independently and vary according to the quality of work they do. Each assessor is required to check the list yearly to determine if it is comprehensive. The listing is considered to be highly accurate for those adults who are employed in the county as the Lycoming County Tax Assessor's Office is able to double-check the list against employment records. The list is also subject to a double check with respect to residents of the city of Williamsport, as there is a second listing available to the Tax Assessor's Office for that purpose. The records would be presumably somewhat less accurate for individuals who do not live in the city and for individuals who are not employed as there are no double checks for those individuals. There is no data available to the court as to the relative percentage of black residents who are employed, vis-a-vis other members of the population. There is clear evidence that a large percentage of the black population does live in the city of Williamsport.

We conclude that the occupational tax list, used by this court system as the basis from which juries are selected, is the most comprehensive listing available to the court and offers a far superior basis for obtaining a cross section of the people, especially as to members of the black race, than would be true of the voter registration list. We see no abridgement of the rights of the moving parties with respect to Pennsylvania and federal constitutions in the use by the court of the occupational tax list for jury selection purposes.

We note that the specific selection process each year follows the following sequence. In about November of each year the court advises the jury commissioners of the total number of jurors who should be summoned for the following year and jury

questionnaires are sent to those individuals. The jury commissioners eliminate from the responses to those questionnaires those individuals who would be statutorily disqualified from serving as jurors. The listing to which those questionnaires were sent was selected by computer through the use of a random program. The jurors whose names are placed in the "wheel" for the following year are subject to a selection process for each week of jury trials. The number of jurors needed for each particular week is selected again by computer with the use of a random program.

Some testimony was presented that on an average one to two blacks are present on each panel of 104 jurors. This was strictly an estimate and is not considered by the court to be accurate.

The court, in the order which follows this opinion, will be denying the motion. It is our interest, however, to make every effort to select jurors from the most comprehensive list which can feasibly be prepared.

We note that the total number of adults who are not on the occupational tax list would appear to be about 7,000 (out of 82,000). The court will ask again to review the jury selection procedure to see whether it is practical to obtain a composite list using both the voter registration list and the occupational tax list, with a likelihood that we would be able to capture the names of any significant percentage of the 7,000 who are presently missing. If the court is satisfied that it is practicable to have such a composite list prepared with a significant increase in the comprehensiveness of the listing of adult citizens, the court will consider that refinement in our jury selection process. We emphasize however, that the court is doing this as part of our continual effort to obtain a maximum cross section of the county's

population for jury selection purposes, and not because there is the slightest degree of merit in the moving party's contention that the present process offends the constitutional rights of minority race members. The existing process is, in our judgment, far superior to that of many counties where only the voter registration list is used.

## ORDER

And now, December 17, 1990, for the reasons set forth in the foregoing discussion, the motion to challenge the selection process of potential jurors in Lycoming County is denied.